UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| ROSE MARINE LLC, an Oregon Limited Liability Company, | Case No. 3:21-cv-00523-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| ALLEN SOTTOSANTI and RENALYND SOTTOSANTI, husband and wife, AMERICAN BREAKWATER, LLC, an Alaska Limited Liability Company, | |
| Defendants. | |

ACOSTA, Magistrate Judge:

On April 7, 2021, plaintiff Rose Marine LLC ("Plaintiff") filed this action against defendants Allen and Reynalynd Sottosanti and against American Breakwater LLC, an Alaska limited liability company of which Mr. Sottosanti is the sole member (collectively, "Defendants"). (Compl. ¶¶ 3-5, ECF No. 1). On July 12, 2021, the parties entered into a settlement agreement. (Decl. of Chris M. MacMillan ("MacMillan Decl.") ¶ 4, Ex. 1, ECF No. 10-2). Before the court

Page 1 – OPINION AND ORDER

is Plaintiff's motion to enforce that settlement agreement, which it contends Defendants have breached in the entirety. (Mot. to Enforce Settlement Agreement, ECF No. 10). For the reasons that follow, Plaintiff's motion is granted in part and denied in part.[1]

*Background*

Plaintiff is the owner of a 92-foot vessel known as the Golden Rose. (Comp. ¶ 1). In early 2020, Plaintiff—through its now deceased former manager—leased the Golden Rose to Defendants for a term of six months. (*Id.*). Plaintiff contends that, while in the possession the Golden Rose, Defendants breached the parties' contract by failing to make installment payments, failing to maintain a standard maritime insurance policy, and negligently operating and damaging the vessel. (*Id.* ¶¶ 1-14). In April 2021, Plaintiff filed this action to recover damages from Defendants. (*Id.*, Prayer for Relief).

Subsequently, the parties negotiated an agreement to settle all claims. (MacMillan Decl. ¶ 3, Ex. 2 at 5-7). Plaintiff was represented by counsel, Christopher MacMillan; Defendants were not represented. (*Id.* ¶ 1). On July 12, 2021, the parties entered a settlement agreement. (MacMillan Decl. ¶ 4, Ex. 1 at 1). Mr. Sottosanti signed the settlement agreement twice: once for himself and once for American Breakwater LLC. (*Id.*)

Under the terms of the settlement agreement, the parties agreed to dismiss all claims with prejudice and without fees and costs. (*Id.* at 1). In exchange, Defendants promised they would: (1) pay $7,458.71, the remaining amount owed to Pacific Power Group, LLC, a third party mechanic that had made repairs on the Golden Rose; and (2) "return all logbooks pertaining the

---

[1] The parties have consented to jurisdiction by magistrate judge in accordance with 28 U.S.C. § 636(c)(1).

Golden Rose" to Plaintiff.  (*Id.*).  The settlement Agreement did not define the meaning of the term "logbooks."  The agreement, however, did contain a severability clause providing "in the event any provision . . . should be held to be void, voidable, or unenforceable, the remaining portions thereof shall remain in full force and effect."  (*Id.*).  Additionally, the agreement provided that, should any party need to enforce the agreement, the prevailing party "shall recover all of the [breaching] party's costs and reasonable attorney's fees incurred."  (*Id.* at 2).  Oregon law governs the agreement.  (*Id.*).

The deadline to comply with the terms of the settlement agreement was set for July 20, 2021, seven days after the parties executed the agreement.  (*Id.* at 2).  Defendants failed to meet that deadline.  (*See* MacMillan Decl. ¶ 6, Ex. 3).  The next day, Plaintiff's counsel notified Mr. Sottosanti that he was in breach of the settlement agreement and warned him that, if necessary, Plaintiff would move to enforce the agreement.  (*Id.* at 27).  Mr. Sottosanti responded that he had been searching through his storage, but needed more time to locate the vessel information.  (*Id.* at 26).  He also stated, "as for Pacific Power [Group], they know the circumstances of the litigation, [and] I'd like to think I could deal with them after I settle the vessel information issue."  (*Id.*).

Plaintiff granted Defendants a few more weeks to comply with the term of the settlement agreement, but eventually moved to enforce the agreement on August 12, 2021.  (Mot. to Enforce Settlement Agreement at 1).  On February 8, 2022, the court held a hearing on that motion.  (Minutes of Proceeding, ECF No. 16).  Plaintiff's counsel was present, but due to some confusion about the time zone, Mr. Sottosanti was unable to attend, so the court reset the hearing for February 18, 2022.  (Order Staying Ruling, ECF No. 17).  The reset hearing is discussed more fully below.  The court took Plaintiff's motion under advisement that same day.  (*Id.*).

Page 3 – OPINION AND ORDER

*Legal Standard*

A district court has the power to summarily enforce an agreement to settle a case pending before it. *Callie v. Near*, 829 F.3d 888, 890 (9th Cir. 1987). Summary enforcement, however, is inappropriate "where material facts concerning the existence or terms of a settlement agreement [a]re in dispute." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (internal citations omitted). "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretations of contracts generally." *Jeff. D. Andrus*, 899 F.3d 753, 759 (9th Cir. 1989).

Under Oregon law, the determination of whether a contract exists is a question of law. *In re Marriage of Baldwin*, 215 Or. App. 203, 207 (2007). "In determining whether a contract exists and what its terms are, [the court] examine[s] the parties' objective manifestations of intent, as evidenced by their communications and acts." *Ken Hood Constr. v. Pac. Coast Constr.*, 201 Or. App. 568, 578, *adh'd to as modified on recons.* by 203 Or. App. 768, *rev. denied*, 341 Or. 366 (2006). Thus, the determination of whether a contract exists "does not depend on whether the parties had the same subjective understanding of their agreement . . . it depends on whether the parties agreed to the same, express terms of the agreement, and on whether those terms constitute an enforceable agreement." *City of Canby v. Rinkes*, 136 Or. App. 602, 611 (1995).

The parties need only agree on the essential or material elements of the contract, not on every possible term. *Pacificorp v. Lakeview Power Co.*, 131 Or. App. 301, 307 (1994). A contractual term is material if it goes to "the substance of the contract and, if breached, defeat[s] the object of the parties in entering into the agreement." *Johnstone v. Zimmer*, 191 Or. App. 26, 34 (2003). Additionally, where a contract contains a severability clause, the court may enforce

the remainder of the contract even where one material term is found to be unenforceable. *See In re Marriage of McInnis*, 199 Or. App. 223, 234 (2005) (holding trial court was correct to find provision of settlement agreement unlawful, but erred in concluding the entire agreement was unenforceable where the agreement contained a severability clause).

*Discussion*

Plaintiff requests that the court enforce the parties' settlement agreement by issuing an order directing Defendants, jointly and severally, to: (1) pay the $7,458 owed to the Pacific Power Group; and (2) either return the Golden Rose "logbooks" to Plaintiff or pay $5,000[2] in compensatory damages for failure to return that vessel information. (Mot. to Enforce at 7). Plaintiff also requests the attorney fees and costs incurred in filing this motion. (*Id.*).

The court finds no dispute with respect to Plaintiff's first request, and therefore, orders Defendants, jointly and severally, to pay $7,458 to the Pacific Power Group as directed in the settlement agreement. Similarly, because Plaintiff partially prevails on this motion, the settlement agreement supports its request for reasonable attorney fees. Accordingly, the court directs Plaintiff to submit a petition for fees in accordance with Local Rule 54-1 and the court's "Notice" regarding fee petitions. *See* https://ord.uscourts.gov/index.php/rules-orders-and-notices/notices/fee-petitions.

The court declines to require Defendants to pay Plaintiff $5,000 for the alleged missing logbook information, however, for the following reasons.

---

[2] Plaintiff originally requested $25,000 in lieu of the returned "logbooks." (Mot. to Enforce Settlement Agreement at 6). However, after receiving pertinent information about the Golden Rose from Defendants, Plaintiff revised that estimate to $5,000. (Pl. Response Following Review of Record Provided by Defs. ("Pl. Resp.") ¶ 3, ECF No. 25.)

Page 5 – OPINION AND ORDER

Although the settlement agreement provides that the "Defendant's shall return all logbooks pertaining to the Golden Rose to Plaintiff within seven days," it does not specify any contingency in the event that the "logbooks" could not be located or returned. (*See* MacMillan Decl. ¶ 4, Ex. 1). Moreover, the settlement agreement does not define "logbooks," and the information before the court suggests that the parties did not mutually agree about the type and timeframe of information contained in such "logbooks."

As an initial matter, the court cannot accurately ascertain whether the agreement required the return of a single or multiple "logbooks." While the settlement agreement refers to "logbooks" in the plural form, neither party apparently can confirm what documents were present on the Golden Rose when Defendants took possession of the vessel. At the telephonic hearing on February 18, 2022, the court asked Plaintiff's counsel whether there had been multiple "logbooks" at that time, which elicited the following response:

> Mr. MacMillan: Your Honor, unfortunately, I don't know the answer to that question, and the reason why is that the original owner that has been talked about during the pendency of this lawsuit and before we settled this case, he passed away, so information about what was there, I don't have, and I don't have any ability to get that information.

(Official Court Transcript of Proceedings ("Transcript"), ECF No. 27). When the court posed that question to Mr. Sottosanti, he also expressed confusion about the number of "logbooks" on the vessel:

> Mr. Sottosanti: I'm not specifically sure what they're looking for and why the logbook is of such importance. I just -- I couldn't tell you, Your Honor, *as far as logbooks plural, I think there may be some mistake there. I don't think there was ever a logbook that I had on the boat, a logbook of private use*. There are a lot of invoices, repair builds, things like that, and that all stayed with the boat. So I -- maybe that's what they're looking for, I don't know, but really nobody ever – there was no reason to keep a logbook on that boat. It didn't operate very often.

Page 6 – OPINION AND ORDER

*Id.* at 7-8 (emphasis added). Based on those responses, the court finds that the parties did not share a common understanding of that term when they signed the settlement agreement.

Additionally, while Plaintiff now requests $5,000 as "a reasonable approximation of the value of the records and logbook information between the years 2016 and 2019," nothing in the record suggests that the parties understood the "logbooks" to contain information from that timeframe. The parties appear to share an understanding of what information is generally contained in a "logbook." (*Compare* Decl. of Yvette Eisenberg ¶ 6, ECF No. 10-1 ("A vessel's logbook generally contains a daily account of what happened aboard the vessel that day and identifies any problems encountered by the captain and crew.") *with* Transcript at 5-7, 11 (Mr. Sottosanti explaining that, as a charter captain, he maintains a "personal logbook" containing "note[s] [about] persons on board and activities, daily activities, any problems, any crew activity, crew safety concerns, or drills of that nature" and "receipts from repairs that [he] had to make on the vessel")). To the extent the information sought by Plaintiff overlaps with the records in Mr. Sottosanti's personal logbook, the court directed Mr. Sottosanti to share that information:

> Defendant Mr. Sottosanti is to make copies of pages from his daily event logbook, along with invoices and receipts for any repairs made to the vessel to make it seaworthy and provide them to Plaintiff no later than 3/4/2022. Plaintiff shall inform the Court whether the information provided affects the value of the amount of damages due to the missing logbook.

(Minutes of Proceeding, ECF No. 19); (Pl. Resp. ¶ 3 (indicating receipt of that information)). However, the court is not convinced that the parties' descriptions of a "vessel logbook" and "personal logbook" support Plaintiff's request for a "logbook" containing information from 2016 to 2019, particularly because Mr. Sottosanti did not take possession of the Golden Rose until 2020. Accordingly, the court declines to award Plaintiff $5,000 for that second condition.

Page 7 – OPINION AND ORDER

*Conclusion*

Plaintiff's Motion to Enforce the Settlement Agreement (ECF No. 10) is GRANTED IN PART AND DENIED IN PART. The court ORDERS Defendants, jointly and severally, to pay $7,458 to the Pacific Power Group as directed in the settlement agreement, but DECLINES to order Defendants to pay $5,000 to Plaintiff for the missing "logbooks." The court DIRECTS Plaintiff to submit a petition for fees in accordance with Local Rule 54-1.

DATED this 6th day of June, 2022.

JOHN V. ACOSTA
United States Magistrate Judge